Annie B. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 35274.
United States Tax Court
1953 Tax Ct. Memo LEXIS 375; 12 T.C.M. (CCH) 131; T.C.M. (RIA) 53046; February 12, 1953
*375 Elmer B. Hodges, Esq., 1015 Bryand Building, Kansas City, Mo., for the petitioner. Everett E. Smith, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in income taxes for the years and in the amounts as follows: Year
Amount
1943
$ 97.92
1944
708.90
1945
756.83
The year 1942 is involved by reason of the Current Tax Payment Act of 1943. The issues presented are (1) whether the payment of the sum of $50,000, which petitioner paid to the Kansas City Life Insurance Company, constitutes a part of her cost basis for shares of stock of that company which she sold in the years 1942, 1944 and 1945; (2) whether the petitioner sustained a nonbusiness loss in the taxable year 1943 in the amount of $2,803.91; and (3) whether certain amounts received by the petitioner in 1942 and 1943, called "interest," under a contract signed by E. G. Trimble, Jr., constitute income in the years of receipt. Other issues raised by the petition have been conceded by the petitioner. The case was submitted on a stipulation of facts, oral testimony and exhibits. The stipulated facts are found accordingly. *376 Findings of Fact Petitioner is an individual residing in Kansas City, Missouri. Her income tax returns for the years involved were filed with the collector of internal revenue for the sixth district of Missouri, at Kansas City. In about the year 1921 the petitioner purchased 100 shares of the capital stock of the Kansas City Life Insurance Company for $47,500. The certificate for the shares was issued in the name of J. B. Reynolds, trustee. J. B. Reynolds was the president of the Kansas City Life Insurance Company, hereinafter referred to as the Insurance Company. In 1923 a nontaxable stock dividend of 150 per cent increased petitioner's holdings in the Insurance Company at 250 shares. On or about April 1, 1925, a nontaxable stock dividend of 100 per cent increased petitioner's holdings to 500 shares. The amount of the original cost allocable to each of the 500 shares was $95. On June 23, 1921, G. M. Smith, husband of the petitioner, and his partners sold to the Insurance Company bonds issued by the Sunny Side Company, a corporation, in a total principal sum of $201,000. G. M. Smith and his partners entered into an agreement to repurchase the bonds in the event of a default. *377 On or about January 1, 1923, such default occurred and the Insurance Company made a demand that the vendors repurchase the bonds, which was not complied with. On March 16, 1925, the payment of the second above-mentioned stock dividend on the capital stock of the Insurance Company was in contemplation. On that date the petitioner and her husband agreed in writing with the Insurance Company that 125 of the shares about to be issued to petitioner should be held as security, to the extent of $50,000, against loss to the Insurance Company from the failure of petitioner's husband and his partners to re-purchase the bonds of Sunny Side Company. It was further agreed that until the sale of the pledged stock the cash dividends paid on such shares were to be paid by the trustee to petitioner. On November 16, 1926, the Insurance Company gave written notice to petitioner and her husband that its loss on Sunny Side Company bonds was the sum of $189,766.11, and that the capital stock held by the pledgee would be sold unless the sum of $50,000 was paid to the Insurance Company within six months. On April 20, 1927, petitioner paid the Insurance Company $28,000 in cash and gave her note for $22,000. *378 The note was paid off in installments extending to at least 1935. In January 1942 petitioner sold 15 shares of the capital stock of the Insurance Company for a total of $5,850, or $390 per share. Petitioner in her return reported a cost per share of $345. There were no nontaxable stock dividends paid subsequent to that of April 1, 1925, until December 13, 1943, at which time a 300 per cent nontaxable dividend was paid, making the amount of the original purchase price allocable to the remaining shares held by petitioner $23.75 per share. In September 1944 petitioner sold 30 shares of the capital stock of the Insurance Company for a total of $4,950, or $165 per share. Petitioner in her return reported a cost per share of $86.25. In 1945 petitioner sold 45 shares of the capital stock of the Insurance Company for $9,000, or $200 per share. Petitioner in her return reported a cost per share of $86.25. Petitioner's basis for the shares of capital stock of Kansas City Life Insurance Company sold in the taxable year 1942 was $95 per share. The basis for the shares of such stock sold in the taxable years 1944 and 1945 was $23.75 per share. Prior to February 6, 1932, petitioner had *379 pledged shares of stock to the Home Trust Company to secure a debt owing to the pledgee bank by E. G. Trimble, Sr. On February 6, 1932, petitioner paid over $7,000 on the note which Trimble had given to Home Trust Company to redeem the stock she had pledged. In November or December 1936, Trimble delivered to petitioner a note of the Investment and Deposit Company of America for $7,000. The note was dated November 1, 1936, and was due November 1, 1937. Payment was guaranteed by endorsement of Trimble on the note. The maker of the note did not pay the principal or interest on the due date of the note. At various times from 1937 to 1939, petitioner endeavored to collect from Trimble, who was in financial distress and unable to pay the note. Prior to February 12, 1939, he had pledged practically all of his assets which stood in his name to secure payment of obligations due to various banks in Kansas City and other creditors. Petitioner, through her agent, continued to exert pressure on Trimble to effect collection, who offered to settle at 50 cents on the dollar. When petitioner indicated she would accept the offer, Trimble qualified his offer, stating he was turning over to his son *380 a note from A. J. Fittger, given by the latter in payment for some stock which Trimble had sold to him, and offered to settle on the basis of 50 per cent of the proceeds realized on the Fittger note. Petitioner agreed to accept such arrangement upon certain conditions. Thereupon a written agreement was executed between the son and petitioner, dated February 12, 1939, reading as follows: "WHEREAS, Annie B. Smith is the holder of a certain promissory note of the Investment and Deposit Company of America dated November 1, 1936, in the principal sum amount of Seven Thousand ($7,000) Dollars with interest at the rate of Five (5%) Per Cent per annum, due November 1, 1937, on which the principal and interest up to date has been defaulted, and, "WHEREAS, E. G. Trimble, Jr., has offered to acquire the said note by the payment of Three Thousand Nine Hundred ($3,900) Dollars in instalments, as hereinafter provided, plus interest at the rate of Three (3%) Per Cent per annum on the unpaid balance of said Three Thousand Nine Hundred ($3,900) Dollars by instalment payments of certain sums realized by him out of two certain promissory notes held by him dated January 1, 1939, made by A. J. Fittger, *381 of Houston, Texas, which said notes are each in the principal sum amount of Fifteen Thousand Six Hundred Twenty-seven and 52/100 ($15,627.52) Dollars with interest at the rate of Three (3%) Per Cent per annum and out of a series of three promissory notes all in equal amounts, all of which said notes are payable in installments of One Hundred ( $100) Dollars per week, payable on the first Saturday after January 1, 1939, and continuing throughout the year of 1939, and One Hundred Twenty-five ( $125) Dollars per week on the first Saturday after January 1, 1940 and continuing the said rate until the principal amount of the said notes shall have been paid, with the right of the maker of the said notes to pay all or any part of the said indebtedness on or before the period of time in which the said notes shall be liquidated through instalments in the amounts above referred to, and the said E. G. Trimble, Jr., has offered to assign an undivided One-eighth (1/8th) interest in each of the said two notes held by him, and "WHEREAS, Annie B. Smith is willing to accept the offer tendered by the said E. G. Trimble, Jr., on the condition that she be permitted to retain the said note of the Investment *382 and Deposit Company of America, and, in the event of default, have all of her legal remedies which she might assert against the maker of the said Investment and Deposit Company of America note and any and all endorsers and guarantors of the said note and all collateral which she now has as security for the payment of the said note, with the right to foreclose said collateral for the purposes for which it was deposited. "NOW, THEREFORE, the parties hereto do hereby mutually agree, each with the other, as follows: "The said E. G. Trimble, Jr., does hereby sell, assign and set over unto Annie B. Smith a One-eighth (1/8th) undivided interest in and to the two above referred to notes made by A. J. Fittger, with full right and interest in said undivided One-eighth (1/8th) share of said notes, and the said E. G. Trimble, Jr., does hereby agree that, out of the weekly payments which he may receive under and pursuant to the two above described notes, the said Annie B. Smith shall receive an amount equal to One-fourth (1/4th) of the instalments applicable to the said two notes until she shall have received an amount equal to Three Thousand Nine Hundred ($3,900) Dollars plus Three (3%) Per *383 Cent per annum on the unpaid portion of said Three Thousand Nine Hundred ($3,900) Dollars. If and when the said Annie B. Smith shall have received in instalments or otherwise an amount equal to Three Thousand Nine Hundred ($3,900) Dollars plus Three (3%) Per Cent per annum on the unpaid portion of said amount, she will surrender by endorsement without recourse upon her the said note of the Investment and Deposit Company of America and will transfer or cause to be transferred any and all collateral which she may hold as security for the payment of the said note, and will re-assign to the said E. G. Trimble, Jr., all of her remaining undivided One-eighth (1/8th) interest in the said two notes made by A. J. Fittger, which undivided interest shall at that time be represented by the unpaid balance of said notes made by A. J. Fittger. "During the period of time in which the instalments contemplated herein shall be paid to Annie B. Smith, she agrees to refrain from asserting any claim under the note made by the Investment and Deposit Company of American [America] but in the event of default, all of her rights to assert claims thereunder and prosecute said claims shall not longer be suspended. *384 Any amounts received up to the time of default shall, however, be credited as payment upon said note of the Investment and Deposit Company of America. "It is understood and agreed by the parties that there shall be no direct obligation accruing against E. G. Trimble, Jr., to pay any of the instalments referred to in this agreement, except out of the proceeds derived from the said two notes made by A. J. Fittger, but if the said E. G. Trimble, Jr., so elects, he may, without obligation to do so, pay such instalments, even though they be not received out of the said two notes. "The payment of instalments to be made to Annie B. Smith shall be on the basis of Sixty-six and 66/100 ($66.66) Dollars to accrue from payments received by E. G. Trimble, Jr., on Saturday, beginning February 11 and continuing through Saturday, December 30, 1939. On January 6, 1940, and thereafter, said payments shall be on the basis of Eighty-three and 32/100 ($83.32) Dollars per week. The said E. G. Trimble, Jr., shall accumulate the instalments received by him and shall disburse the amounts due Annie B. Smith monthly. "IN WITNESS WHEREOF, the parties hereto have caused these presents to be executed this *385 twelfth day of February, 1939." Final payment under the aforesaid contract was made to petitioner in August 1943. The note of the Investment and Deposit Company was marked paid and surrendered. In her 1943 income tax return petitioner claimed a nonbusiness bad debt loss in the amount of $2,803.91, which was treated as a short-term capital loss. Respondent disallowed the claimed deduction. Petitioner sustained a nonbusiness bad debt loss in 1943, in the amount of not less than the sum of $2,803.91, in connection with the Investment and Deposit Company's note in the face amount of $7,000. In determining petitioner's tax liability for 1942 respondent included $36.26 as interest received on the Trimble contract, which was omitted from gross income. In determining his deficiency for the taxable year 1943 respondent included $9.55 as interest received on the Trimble contract, which was omitted from income. The interest paid to petitioner under the agreement of February 12, 1939, constituted taxable income in the years of its receipt. Opinion LEMIRE, Judge: The primary question presented is whether the payments totalling $50,000, which petitioner made to Kansas City Life Insurance *386 Company from 1927 to 1935, were made to perfect her title to the shares of capital stock of that company. If made for such purpose the adjusted basis of her stock to be taken into consideration in determining the gain from the sales made in the taxable years involved has been stipulated. The payments were made pursuant to a written agreement of March 16, 1925, executed by petitioner and her husband, G. M. Smith. That agreement, in substance, provided that petitioner and her husband would pay to the Insurance Company any loss it might sustain by reason of the failure of G. M. Smith and his partners to repurchase certain bonds they had previously sold to the Insurance Company in the event such bonds became in default, up to the amount of $50,000. The agreement also provided that the petitioner consent that 125 shares of a nontaxable dividend of 250 shares about to be issued by the Insurance Company be taken in the name of J. B. Reynolds, as trustee for the Insurance Company, as collateral security for payment of the loss sustained up to the amount of $50,000. The Insurance Company's loss was later ascertained to be in excess of $50,000, and the Insurance Company made demand upon petitioner *387 and her husband to pay the sum of $50,000 within six months, and in default of payment sufficient collateral held would be sold. To prevent a sale of the collateral petitioner paid the Insurance Company $28,000 in cash and delivered notes to cover the balance. The notes were paid off in installments and the final payment was made in 1935. Petitioner argues that she executed the agreement of March 16, 1925, to recapture the 100 shares of stock of the Insurance Company acquired by purchase in 1921, plus the 150 shares of stock she acquired as a nontaxable stock dividend paid in 1923, and to avoid expensive litigation. It appears from the record that when the petitioner acquired the 100 shares by purchase in 1921 they were issued in the name of J. B. Reynolds, as trustee for the petitioner. Presumably, although the records are not definite on this point, the first stock dividend of 150 shares was also taken in the name of the trustee. The record does not disclose why those shares were taken in the name of a trustee, or when they were delivered by the trustee to petitioner. There is no evidence in the record that petitioner was ever indebted to J. B. Reynolds, individually, and her only *388 liability to the Insurance Company was by virtue of the agreement of March 16, 1925. There is no evidence that petitioner ever made any demand upon J. B. Reynolds, or that he ever refused to deliver such shares to petitioner, nor is there any evidence that he ever claimed any beneficial interests in the shares or made any threats to induce the petitioner to execute the agreement of March 16, 1925. Petitioner's contention that the $50,000 payment was made to perfect her title to the shares is based on the testimony of the witness Hodges, an agent of petitioner, who testified that he was told by petitioner's husband that "to recapture the stock he saw nothing else for Mrs. Smith to do but to sign up." The time when such statement was made to the witness is not fixed. No one of the interested parties, except G. M. Smith, was present at the time such alleged statement was made. We are unwilling, under all of the circumstances revealed by this record, to accept the statement of the witness Hodges as establishing the only reason petitioner executed the contract of March 16, 1925. The conclusion that other considerations motivated the execution of such contract is inescapable. To accept *389 such testimony as decisive is to impute unlawful acts by the fiduciary, who, as an officer of the court, is presumed to act legally. At the time of the hearing of this proceeding J. B. Reynolds was deceased. Under such circumstances, a challenge to the integrity of his fiduciary acts will not be accredited. On the basis of the entire record, we hold that petitioner has not established that the payment of $50,000 was made to protect or defend the petitioner's title to the shares of capital stock of Kansas City Life Insurance Company, and therefore is not part of the adjusted cost basis of her stock sold in the taxable years in question. On this issue the respondent's determination is sustained. The second question presented is whether petitioner sustained a nonbusiness bad debt in the taxable year 1943. The facts, briefly summarized, show that petitioner furnished collateral to a loan of $7,000 secured by Trimble. To secure the return of stock pledged petitioner paid the loan and received a note of the Investment and Deposit Company, of which Trimble was then president, which note, dated November 1, 1936, was endorsed by Trimble. The note was payable November 1, 1937, and on that *390 date became in default for principal and interest. The petitioner through her agent endeavored to collect the note from Trimble, who was then heavily involved financially. In about 1939 Trimble made an offer to adjust his indebtedness to petitioner on the basis of a payment of 50 per cent of the amount due, which was approximately $7,800, including interest. Petitioner was about to accept the offer when Trimble stated that he had a note of A. J. Fittger, which he had received for the sale of some laundry stock which he had turned over to his son, and requested petitioner to accept payment when the installments on the Fittger note were paid. Petitioner refused to accept such arrangement except on certain conditions. Under date of February 12, 1939, petitioner and a son of Trimble entered into a written agreement under which he was to acquire the note of the Investment and Deposit Company in the face amount of $7,000 for $3,900, plus three per cent interest on the unpaid balance. The $3,900 was to be paid off in fixed installments as the monies were received from Fittger. Under the agreement, petitioner retained title to the note and all of her legal rights thereunder, except that the *391 right to enforce collection was waived until a default occurred. On the payment of the agreed amount petitioner was to surrender the note and any collateral without recourse. The agreement was performed by both parties and the final payment and surrender of the note took place in August 1943. We think the petitioner made a conditional agreement compromising the indebtedness of Trimble, and that, on the surrender of the note in 1943, she sustained a nonbusiness bad debt loss within the meaning of section 23(k)(4) of the Internal Revenue Code. The respondent also contends that the petitioner is not entitled to a nonbusiness bad debt deduction as there is no evidence that the note was not collectible from the maker. We think it is obvious from this record that the Investment and Deposit Company was an accommodation maker, and the petitioner could not recover from the corporation without showing the issuance of the note was authorized. Petitioner always regarded Trimble as the true debtor. As a result of such transaction petitioner claimed a short-term capital loss in the amount of $2,803.91 in the taxable year 1943. The loss sustained was in fact greater than *392 the amount claimed by petitioner but no claim is made for a greater amount. The loss claimed is allowed. On this issue petitioner is sustained. There remains for determination the question as to whether the interest paid under the Trimble contract is taxable income to petitioner. The respondent has included in petitioner's gross income, as interest, the amount of $36.26 in the year 1942 and the amount of $9.55 in the taxable year 1943. Petitioner has offered no proof as to the amount of interest received in such years, but contends that the so-called interest should be treated as payment on the principal of the note. We do not agree. The agreement specifically provides for the payment of three per cent interest upon the compromised amount of indebtedness of $3,900. We think it was interest in fact and was properly included in the gross income of petitioner. For lack of proof as to the correct amount of interest received by petitioner under the Trimble contract, the respondent's determination is sustained. Decision will be entered under Rule 50.